UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

THOMAS W. MAZZA,

      Plaintiff,

-against-

DISTRICT COUNCIL OF NEW YORK
AND VICINITY, UNITED BROTHERHOOD
OF CARPENTERS AND JOINERS OF
AMERICA,

      Defendants.

-----------------------------------------------------------x

THOMAS W. MAZZA,

      Plaintiff,

-against-

ANTHONY SENECA and CARLO SENECA,
Conducting Business under the name of
C & A SENECA CONSTRUCTION,

      Defendants.

-----------------------------------------------------------x

CASE NO. 00-CV-6854(SJ)(MJP)

COGAN J.
POLLACK M.J.

CASE NO. 01-CV-6002(SJ) (MJP)

RECEIVED SEP 08 2008 PRO SE OFFICE

## PLAINTIFF'S REQUESTS TO CHARGE AGAINST DEFENDANT UNION AND DEFENDANT SENECA

1. The jury is instructed that when plaintiff uses the word "collective bargaining agreement," plaintiff is referring to this agreement as also known as the "CBA" and the "Independent Construction Building Agreement" between the defendant Union and defendants Seneca.

2. The jury is instructed that "the following claims [of plaintiff] survive for trial:

1. Unpaid overtime pursuant to the FLSA [Fair Labor Standards Act];

2. Unpaid overtime, supplemental wage and/or 'call-in pay and laundry/uniform allowance pursuant to NYSLL [New York State Labor Law];

3. Breach of implied contract to pay prevailing wage for work performed on public works projects;

4. Third party beneficiary to contracts for payment of prevailing wage;

5. Retaliatory discharge in violation of the FLSA;

6. Retaliatory discharge in violation of the NYSLL;

7. Discharge without cause in violation of the CBA;

8. Breach of duty of fair representation for failure to grieve termination and for failure to advise of contract rights on projects other than Holy Rosary."

Citing *Mazza v. District Council of New York*, 2007 WL 2668116 (E.D.N.Y.).

### Plaintiff's Claim's 1, 2, 3, 4, 5, 6, 7 & 8.-

3. Plaintiff charges that you, as individuals, must consider the collective bargaining agreement, and its contract language, between the defendant Union and defendants Seneca, dated from July 1, 1996 to June 30, 2001, in reviewing the CBA it **does not** document Holy Rosary project at all throughout the CBA as the **only** project under the collective bargaining agreement's protection. "Plaintiff asserts that the [collective bargaining agreement] was in effect from July 1, 1996 to June 30, 2001 and was not limited to the Holy Rosary project, but rather covered all carpentry work within a set region." *Mazza v. District Council of New York*, 2007 WL 2668116 (E.D.N.Y.), *3.

4. "A party is entitled to an instruction on their theory of the case so long as the [contract] is supported by competent evidence on the issue." *Perlmutter v. U.S. Gypsum Co.*, 4 F.3d 864, 872 (10th Cir. 1993), citing *Perlmutter*, 4 F.3d at 871.

5. The jury is instructed that if plaintiff proves that the collective bargaining agreement between the defendant Union and defendants Seneca, dated from July 1, 1996 to June 30, 2001, was effective from the date of July 1, 1996, then you must consider the charge that the CBA offers the "'Retroactivity' provision of the agreement (Article XX), which provides that 'all wages, fringe benefits and conditions provided for in this

Agreement shall be retroactive to July 1, 1996.'" Article XX, Independent Building Construction Agreement, dated July 1, 1996 to June 30, 2001. *Mazza v. District Council of New York*, 2007 WL 2668116 (E.D.N.Y.), *3. Then you, as a whole, must consider that the CBA **covered all other construction projects, including but not limited to all** City, State and federal funded "public works" project day care centers involved with the Administration for Children's Services, that plaintiff performed work on. Then you as a whole must determine the contract language of the CBA which "According to its terms, the CBA applies 'to all covered work performed by Carpenter Employees within the territorial jurisdiction of the [Union]," encompassing all New York City and a portion of Long Island. Article VIII of the Independent Building Construction Agreement, dated July 1, 1996 to June 30, 2001 *Mazza v. District Council of New York*, 2007 WL 2668116 (E.D.N.Y.), *3.

6. The jury is instructed that there was a previous collective bargaining agreement, between the defendant Union and defendants Seneca was effective from July 1, 1990 to June 30, 1993.

7. The jury is instructed to consider that defendant Union and defendants Seneca should provide evidence to support that the collective bargaining agreement was effective in 1999. If the defendants have not substantiated this, then you must consider **if** the CBA covered only the Holy Rosary project, or if the CBA covered all projects plaintiff performed work for the Employer.

8. The jury is instructed that plaintiff, covered by the collective bargaining agreement, cannot be discharged for joining a union and/or his union activity. Article VI. Section 1, of the Independent Building Construction Agreement, dated July 1, 1996 to June 30, 2001. 29 U.S. 215. The jury is also instructed that defendant Union considered plaintiff experienced in carpentry work being done on the said job by that Employer, as plaintiff was given a union card and sent back to the Holy Rosary project jobsite. Article VI. Section 3, of the Independent Building Construction Agreement, dated July 1, 1996 to June 30, 2001. If an Employer rejects the employee, the employer shall notify the Union in writing the reasons for rejection, not terminate such employee. Article VI. Section 6, of the Independent Building Construction Agreement, dated July 1, 1996 to June 30, 2001. Such discharge is without good cause if not in writing. Discharge of employment because of plaintiff's union activities is a direct violation of 29 U.S. 157.

9. The jury is instructed that "A union's breach of its duty of fair representation to the employee does not shield the employer from liability. Having initiated the charges against the employee and having wrongfully terminated the employee, the employer precipitated the dispute through its own acts." Citing *Anchorage Police Dept. Employees Ass'n. v. Fleichtinger* (12/30/99) sp-5224, (based upon its use of federal case law to

substantiate employer's liability). "In addition to asserting a wrongful discharge claim against their employer, the employees claimed that their union "had made no effort to ascertain the truth of the charges, and that the Union had violated its duty of fair representation by arbitrarily and in bad faith depriving [them] of their employment and permitting their discharge without sufficient proof." *Hines v. Anchor Motor Freight*, 424 U.S. 554 (1976).

10.   Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158 (a)(3) of this title. 29 U.S. 157.

11.   For an Employer "To discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S. 215(3).

12.   The jury is instructed that "Once the plaintiff makes a *prima facie* case, the burden shifts to the defendant to articulate a 'legitimate non-discriminatory reason for the employment action.'" *Lai v. Eastpoint Intern., Inc.*, 2000 WL 1234595 (S.D.N.Y.), 141 Lab.Cas. P 34,120. "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. See, *e.g., Wright v. West*, 505 U.S. 277, 296. Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation especially since employer is in the best position to put forth the actual reason for its decision. Cf. *Furnco Constr. Corp v. Waters*, 438 U.S. 567, 577." Citing *Reeves v. Sanderson Plumbing Products, Inc.* (99-536) 197 F. 3d 688 (reversed).

13.   "The terms 'injured in his person or property' define the harm that the victim may suffer as a result of the conspiracy to intimidate or retaliate." *Haddle v. Garrison* (97-1472), 132 F.3d 46, reversed and remanded. Furthermore, "It is beyond dispute that a violation of section 215(a)(3) occurs whenever an employee is discharged as a result of rights under the Fair Labor Standards Act. Such a violation occurs whether the assertion of statutory rights is the sole motivation for the discharge or only one of the motivating factors for the discharge." See *Marshall v. Mardels, Inc*, 1978 WL 1698 (E.D.N.Y.), 23 Wage & Hour Cas. (BNA) 980, 84 Lab.Cas. P 33,706.

14.   You, as a whole, are instructed to examine the Fair Labor Standards Act as it covers an employee filing a complaint to his union against the Employer. Then you, each as individuals, are instructed to examine plaintiff's verbal complaint to the defendant Union against his [Employer] Seneca the day he was . "The majority of circuit courts have found that the text, structure, and legislative purpose of FLSA support the conclusion that informal complaints fall within the "has filed any complaint" language of the statute based on the following reasoning. *See Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999) (en banc) (holding internal complaints to employer satisfy § 215(a)(3)); *Valerio v. Putnam Assoc.*, 173 F.3d 35 (1st Cir. 1999) (same); *EEOC v. Romeo*, 976 F.2d 985 (6th Cir. 1992) (same); *EEOC v. White & Sons Enters.*, 881 F.2d 1006 (11th Cir. 1989) (same); *Love v. Re/Max of Am., Inc.*, 738 F.2d 383 (10th Cir. 1984) (same); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179 (8th Cir. 1975) (same). The language "has filed any complaint" is ambiguous. *See Valerio*, 173 F.3d at 41; *Ackerley*, 180 F.3d at 1004; *cf. Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993). Despite the text's ambiguity, courts have reasoned that the broad purpose of the FLSA would suggest an equally broad reading of this provision of the statute. Specifically, courts cite *Tennessee Coal, Iron & R. Co. v. Mucoda Local No. 123*, 321 U.S. 590, 597 (1944), in which the Supreme Court held that "[FLSA is] remedial and humanitarian in purpose.... such a statute must not be interpreted or applied in a narrow, grudging manner." *Ackerley*, 180 F.3d at 1003; *see also Brennan*, 513 F.2d at 181; *White & Sons Enters.*, 881 F.2d at 1011-12. Citing *Coyle v. Madden et al.*, Memorandum and Order, Judge Berle M. Shiller, No. 03-4433, United States Eastern District Court for the Eastern District of Pennsylvania, December 17, 2003. *Mazza v. District Council of New York*, 2007 WL 2668116 (E.D.N.Y.).

15.   Plaintiff charges that you, each as individuals, have an absolute right to be informed of your relevant rights, by your union, according to the contract language of the CBA.   "The duty of fair representation is a 'broad concept' that extends to the negotiation, administration and enforcement of the CBA. *U.S. v. District Council of New York City*, 941 F.Supp. 349, 371-72 (S.D.N.Y. 1996). This duty is broad enough to encompass a Union's failure to inform employees of relevant rights and information. *See N.L.R.B v. Local 282, Int'l Broth. Of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 740 F.2d 141, 146 (2d Cir. 1984) (holding that there is "no reason why a breach of this duty cannot also be found... [where] the Union is charged with failing to inform many of its members about an arbitration award affecting their employment status). *See also Byrne v. Buffalo Creek R.R. Co.*, 536 F.Supp. 1301, 1311 (W.D.N.Y. 1982) (Union breached duty where it did not inform employee of written prerequisite to commencing a grievance and failed to commence a grievance on that basis). Citing *Mazza v. District Council of New York*, 2007 WL 2668116 (E.D.N.Y.) at *15. The failure of defendant Union to advise plaintiff of "[his] contract rights may also constitute a breach of duty of fair representation." *Retena v. Apartment Motel, Hotel and Elevator*

*Operators Union, Local 14, AFL-CIO*, 453 F.2d 1018; 1027 (9th Cir. 1972). *Mazza v. District Council of New York*, 2007 WL 2668116 (E.D.N.Y.) at * 16.

16.  Plaintiff instructs the jury that a union in exercising discretion in determining whether to pursue or process an employee's grievance on the merits, a union must follow the grievance procedure. Article XII, Section 1 of the Independent Building Construction Agreement, dated July 1, 1996 to June 30, 2001. Although the CBA does not specify procedures on how union representative investigates or pursues a grievance, "An employer, on request must provide a Union with information that is relevant to its carrying out its statutory duties and responsibilities in representing employees, which includes information relevant to contract administration and the processing of grievances." *NLRB v. Acme Building Industrial Co.*, 385 U.S. 432 (1957); CEC Inc., 337 NLRB 516, 518 (2002). Plaintiff charges that a union has an obligation to its members to properly investigate a grievance neutrally. "The [Union] often did little to investigate or punish even flagrant violations…" *United States of America v. District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America, et at.*, Docket No. 90 Civ. 5722 (E.D.N.Y. 1990).

17.  The jury is instructed that "the Court has recognized that employees may be prevented from exhausting the contractual procedures, or may be unable to obtain a fair hearing in arbitration, if the union breaches its DFR [duty of fair representation] either in deciding not to pursue contractual procedures or in the way it conducts them." *Vaca v. Snipes*, 386 U.S. 171 (1967); *Hines v. Anchor Motor Freight*, 424 U.S. 554 (1976)."

18.  The jury is instructed that if plaintiff has proven that the defendant Union had full knowledge of defendants Seneca being audited by an outside company, then you must examine the plaintiff's hours the audit documents recorded.

19.  The jury is instructed that if plaintiff has proven he exhausted all proper procedures before properly finally filing an action against the defendant Union, in the United States District Court, Eastern District of New York, then you must examine "The doctrine of fair representation, which protects individuals against arbitrary union conduct, might be jeopardized by the National Labor Relations Board's failure to act in certain cases… As practical matter, in an employee's suit against his employer for breach of contract under 301 of the Labor Management Relations Act, the employee may well find it necessary to prove a breach of duty by his union, a facet of the case which does not destroy the court's jurisdiction, even if the employee joins the union as a defendant. That being so, the result should be no different if the employee sues the employer and the union in separate actions" See *Vaca v. Snipes*, 386 U.S. 171 (1967).

20. The jury is instructed that if plaintiff has met his burden of proof that defendant Union acted in bad faith by not representing plaintiff when he was terminated by his Employer without good cause, then you must proceed to the federal and state laws as well as case law to support that by defendant Union failing in its duty to represent plaintiff allowed defendants Seneca to retaliate on plaintiff, during and after plaintiff's discharge. *Mack v. Ford Motor Co.*, 283 Ill. App. 3d 52, 57, 669 N.E.2d 608, 612 (1996). The proximate cause of an injury can become a question of law only when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them. *Mack*, 283 Ill. App. 3d at 57, 669 N.E.2d at 612-13. There may be more than one proximate cause of an injury. *Mack*, 283 Ill. App. 3d at 57, 669 N.E.2d at 613. A defendant may be held liable **even if his [duty] is not the sole proximate cause of the plaintiff's injuries, so long as his conduct contributed in whole or in part to the injury**. *Mack*, 283 Ill. App. 3d at 57, 669 N.E.2d at 613. Plaintiff's livelihood and family were in put in danger when defendant Union breached its duty to represent plaintiff after he joined the union, on his discharge, along with plaintiff's back wages, instead placing plaintiff under the proper protection of Union as a non-union, and union, employee. "The terms 'injured in his person or property' define the harm that the victim may suffer as a result of the conspiracy to intimidate or retaliate." *Haddle v. Garrison* (97-1472), 132 F.3d 46, reversed and remanded.

21. The jury is instructed that if plaintiff has met his burden of proof that on the same day plaintiff complained to defendant union's representative of non-union work being performed and then joined the union, then he was discharged, then you must consider retaliatory discharge as the motive based on plaintiff's union activities. 29 U.S. § 215(a)(3). You must further consider if Employer as a union company discharged plaintiff without good cause, then it in violation of the collective bargaining agreement pursuant to 29 U.S. § 157.

22. The jury is instructed that if plaintiff has met his burden of proof that defendant Union breached its duty to fairly represent plaintiff, in discharge, retaliatory discharge by plaintiff's Employer for plaintiff's union activities, on informing him of his rights as a union member under the CBA, failure to represent plaintiff of public works projects covered by the CBA, **then you must find** that plaintiff is entitled to the following relief from defendant Union pursuant to New York State Labor Law Articles 8, 8-A or 9, 29 U.S.C. 185; 29 U.S.C. Section 186; 29 U.S.C. Sections 216 and 216(b); (4) provisions of FLSA 29 U.S.C. Sections 206 and 207 pursuant to New York State Law, including protections set forth in Articles 6 and 19 of the Labor Law of the State of New York; wage orders of 12 NYCRR 137 to 142, attorneys fees and liquidated damages equal to 25% of the amount of such unpaid supplemental wage, overtime, prevailing wage, Union wage and benefits as provided under the NYMWA and New York Labor Law Sections 198 and 663 and interest and costs as provided by law; liquidated damages under FLSA and NYSLL; plaintiff seeks back pay, forward pay and all other benefits, increments, etc.,

an additional equal amount as liquidated damages, compensatory damages sufficient top fully compensate plaintiff for injuries caused by defendants' retaliatory conduct and punitive damages, together with attorneys fees, costs of the suit and pre and post judgment interest for defendants' violation of 29 U.S.C. Section 215(a)(3); injunction of defendants from violating Section 215 of the NYSLL; reinstatement with preservation of seniority and pay for lost compensation; damages; Apportionment of the imposition of liability and damages to be paid by each defendant, as the Court deems just and proper.

23.     The jury is instructed that if plaintiff has met his burden of proof that defendant Union was knowledgeable of the Employer/Landlord Seneca's attack on plaintiff, plaintiff's residence, another individual and a child on June 15, 2000, exactly 10 days after plaintiff was discharged, then you must consider that in "*Radio Officers' Union v. NLRB,* 347 U.S. 17, 40 (1954), `NLRA National Labor Relations Act is designed to allow employees to freely exercise their right to join unions, be good, bad, or indifferent members, or abstain from joining any union **without imperiling their livelihood.**'" Quote from *Breininger v. Sheet Metal Workers International Association Local Union No. 6*, No. 88-124 (1988).

 

                                       Respectfully Submitted,

                                       Thomas W. Mazza
                                       Plaintiff, *Pro Se*

Dated: September 8, 2008
       Brooklyn, New York